IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD D. PARKELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civ. No. 12-1304-SLR ) |
| PHILLIP MORGAN, et al., | ) ) |
| Defendants. | ) |

---

Donald D. Parkell, Howard R. Young Correctional Institution, Wilmington, Delaware, Pro Se Plaintiff.

---

**MEMORANDUM OPINION**

Dated: January 22, 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Donald D. Parkell ("plaintiff"), is a pretrial detainee at the Howard R. Young Correctional Institution ("HRYCI"), Wilmington, Delaware, who proceeds pro se and has been granted in forma pauperis status. He filed this complaint pursuant to 42 U.S.C. § 1983 claiming violations of his constitutional rights.[1] (D.I. 3) Plaintiff filed an amended complaint on January 9, 2013 adding as parties defendant Delaware Department of Correction ("DOC") Commissioner Carl Danberg ("Danberg") and hearing officer Lt. Pedrick ("Pedrick"). (D.I. 8) In addition, plaintiff recently filed a motion for injunctive relief to obtain dental treatment. (D.I. 10)

## II. STANDARD OF REVIEW

This court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant plaintiff leave to amend her complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare

2

recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 1949. When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiff has a "plausible claim for relief."[2] *Id.* at 211. In other words, the complaint must do more than allege plaintiff's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

The complaint contains two counts. Count one alleges cruel and unusual punishment in violation of plaintiff's Fourteenth Amendment rights and count two alleges that plaintiff was subjected to conditions significantly worse than other people under similar circumstance in violation of the due process clause of the fourteenth amendment. More particularly, plaintiff alleges delay and denial in receiving dental, medical, and mental health treatment, unlawful conditions of confinement, denial of law

---

[2]A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

3

library access, violations of his right to equal protection, an unlawful finding of violation of prison rules with subsequent loss of privileges, and denial of a religious diet.

The Eighth Amendment cruel and unusual punishment clause does not apply until an inmate has been both convicted of and sentenced for his crimes. *See Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989); *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005). Pretrial detainees are protected under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979); *Boring v. Kozakiewicz*, 833 F.2d 468, 471 (3d Cir. 1987). A pretrial detainee "may not be punished [at all] prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535. Thus, a pre-trial detainee may be subject to "the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536-37.

### A. Respondeat Superior

The amended complaint adds Danberg as a defendant. A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). A § 1983 claim cannot be premised upon a theory of respondeat superior. In order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. 2010) (unpublished) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Rode v. Dellarciprete*, 845 F.2d at 1207).

4

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit - here masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; *e.g.*, supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample v. Diecks*, 885 F.2d at 1117-118; *see also Iqbal*, 566 U.S. at 677-686; *City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240 (3d Cir. 2005) (unpublished).

5

Plaintiff provides no specific facts how Danberg violated his constitutional rights, that he expressly directed the deprivation of his constitutional rights, or that he created policies wherein subordinates had no discretion in applying them in a fashion other than the one which actually produced the alleged deprivation. The allegations against Danberg do not satisfy the *Iqbal* pleading requirements. For the above reasons, the court dismisses all claims against Danberg claims as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### B. Conditions of Confinement

Plaintiff raises a litany of complaints regarding the conditions at the HYRCI. With regard to defendant Correct Care Solutions ("CCS"), plaintiff complains that he was told to purchase medicinal items from the commissary as they were not provided free of charge by CCS.[3] In addition, plaintiff alleges that defendant Warden Phillip Morgan ("Morgan") enacted and/or maintained policies, practices or procedures that violated plaintiff's constitutional rights as follows: (1) he is limited in the amount of clothing and linens assigned to him, and he was not provided a laundry bag[4]; (2) he is denied basic hygiene because he does not always receive razors on the scheduled days and is not provided a shaving "make-up opportunity" when the tier is on lockdown; (3) he is not provided adequate mirrors; (4) there are two showers for the use of 59 inmates; (5) there are three telephones for the use of 59 inmates; (6) an insufficient number of

---

[3]The resolution of plaintiff's grievance indicates that, because his name is on the indigent list, he is not charged for medications from the commissary. (D.I. 3 at 80)

[4]The resolution of plaintiff's grievance indicates that he was issued a laundry bag. (*Id.* at 77-78)

6

correctional officers are assigned to monitor a tier; (7) inadequate staffing and correctional officers are pulled from a tier causing lockdowns; (8) there is inadequate space to exercise and no outdoor exercise; (9) there are insufficient food portions; (10) the installation of a device on the cell toilet penalizes an inmate for flushing the toilet more than once in five minutes;[5] (11) three pretrial detainees are housed in a one-man cell; (12) there is a lack of privacy when using the toilet; (13) plaintiff must use the laundry service and may not use other methods to wash clothing; (14) when on lockdown, he is required to eat his meal in a cell with an unflushed toilet and two other men; (15) only 52 seats are provided at meal time when there are 59 inmates; (16) he is issued a pillowcase, but not a pillow; (17) there was a lack of response during the failure of the air system on an emergent basis; (18) correctional officers intentionally find ways to place a tier on lockdown rather than allowing more out-of-cell time; (19) sentenced inmates are housed with pretrial detainees as punishment to the sentenced inmate; and (20) sentenced inmates are afforded all facility amenities while pretrial detainees are afforded none.

When a pretrial detainee claims that the conditions of his confinement violate his due process rights, "the proper inquiry is whether those conditions [at issue] amount to punishment of the detainee." *Bell*, 441 U.S. at 535. *Bell* established a two-prong standard for determining whether conditions of confinement violate Due Process: whether the questioned "restrictions and practices" (1) "are rationally related to a

---

[5] If the toilet is flushed more than once in five minutes, a mechanism engages and the toilet cannot be flushed for a one-hour period.

legitimate nonpunitive governmental purpose[,]" and (2) "whether they appear excessive in relation to that purpose." *Id.* at 561. The first prong requires a two-part inquiry: (1) whether any legitimate purposes are served by [the] conditions [of confinement], and (2) whether these conditions are rationally related to these purposes." *Hubbard v. Taylor*, 399 F.3d at 159.

"[C]onfining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment[.]" *Id.* For example, a constitutional violation may occur where the conditions of confinement are "unsanitary and humiliating." See *Union County Jail Inmates v. Di Buono*, 713 F.2d 984, 996 (3d Cir. 1983). The conditions of which plaintiff complains do not rise to the level of punishment because the conditions were rationally related to the nonpunitive purpose of housing pretrial detainees, and do not appear to be excessive. At most, plaintiff complains of inconvenient and uncomfortable situations, but "the Constitution does not mandate comfortable prisons[.]" *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). For the above reasons, the court dismisses the foregoing claims as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### C. Medical, Dental, and Mental Health Treatment

Plaintiff argues that violations of his constitutional rights occurred when CCS and Morgan delayed dental treatment based upon the policy that dental treatment (other than for extractions) for pretrial detainees be delayed either three or six months. In addition, plaintiff alleges that CCS delayed or denied a required asthma inhaler. Finally,

8

plaintiff alleges that Mental Health Management ("MHM") violated his constitutional rights by failing to provide mental health treatment. When plaintiff arrived at the HYRCI, on March 29, 2012, he informed the nursing staff of his mental health condition, the need for an evaluation and for continued medication, yet he was not seen by mental health until nearly two months after his arrival at the HYRCI. Plaintiff alleges that MHM failed to staff a sufficient number of employees to provide treatment to inmates at the HYRI, causing plaintiff a long delay in the receipt of mental health treatment. When plaintiff was finally seen and prescribed medication, within a week he began experiencing adverse reactions, but it was three to four weeks before the medication was adjusted. Plaintiff will be allowed to proceed on these claims.

### D. Law Library Access

Plaintiff has pending civil and criminal cases. He alleges that he is not permitted physical access to the law library. He further alleges that his access is limited "to whatever he can conjure up in his uneducated, ignorant to law mind to request." Plaintiff goes on to describe the access he is provided. (D.I. 3 at 17-20)

Prisoners must be allowed "adequate, effective and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (holding that prisons must give inmates access to law libraries or direct legal assistance). A violation of the First Amendment right of access to the courts is only established where a litigant shows that he was actually injured by the alleged denial of access. The actual injury requirement is a constitutional prerequisite to suit. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (explaining that the constitutional right of access is "ancillary to the underlying claim, without which a plaintiff cannot have

suffered injury by being shut out of court"). It is evident from plaintiff's allegations that he is provided law library access, albeit not the type he desires. Plaintiff's access to the courts claim fails as a matter of law and is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A.[6]

### E. Equal Protection

Plaintiff alleges that the foregoing conditions of confinement of which he complains subjected him to conditions significantly worse than other persons under similar circumstances. However, his complaints are directed towards the difference in treatment between sentenced inmates and pretrial detainees.

To state a claim under the Equal Protection Clause, a prisoner must allege that he was treated differently from similarly situated inmates. *Saunders v. Horn*, 959 F. Supp. 689, 696 (E.D. Pa.1996); *see also City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (noting that the Equal Protection clause "is essentially a direction that all persons similarly situated should be treated alike"); *Price v. Cohen*, 715 F.2d 87, 91 (3d Cir. 1983) ("To establish a violation of the equal protection clause, a plaintiff must show that [an] allegedly offensive categorization invidiously discriminates against [a] disfavored group.").

Here, the allegations do not indicate that plaintiff was treated differently than others who were similarly situated and that the alleged unequal treatment was the result of intentional or purposeful discrimination. *See Slade v. Hampton Roads Reg'l Jail*, 303

---

[6]Plaintiff alleges that, as a pretrial detainee seeking law library access, he is treated differently from convicted prisoners. (D.I. 3, ¶¶ 21-24) Given the fact that there was no violation of plaintiff's right to access to the courts, his equal protection claim is moot.

F.Supp.2d 779 (E.D. Va. 2004) (detainee is not "similarly situated" to convicted inmates); *Moss v. Clark*, 886 F.2d 686, 691 (4th Cir.1989) (the class to which an inmate belongs consists of the persons confined as he is confined, and subject to the same conditions to which he is subject). The court, therefore, dismisses the equal protection claims as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### F. Disciplinary Proceedings

Plaintiff alleges that Pedrick violated his constitutional rights when Pedrick found plaintiff guilty of having dangerous contraband and then punished plaintiff with twenty days confinement "in the hole." Unlike sentenced inmates, pretrial detainees have a liberty interest in being free from punishment prior to conviction under the Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979). "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Id.* at 538. Therefore, "if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id.* at 539. In the absence of substantial evidence in the record to indicate that the officials have exaggerated their response, courts should ordinarily defer to the expert judgment of corrections officials in determining whether restrictions or conditions are reasonably related to the government's interest in maintaining security and order and operating the

institution in a manageable fashion, given that said considerations are peculiarly within the province and professional expertise of corrections officials. *Id.* at 540 n.23.

Unconstitutional punishment typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind [.]" *Id.* (citations omitted).

It is clear from the allegations in the complaint that plaintiff's claim does not satisfy the objective component of his substantive due process claim. Plaintiff was disciplined for having contraband deemed by the HYRCI as dangerous, but that plaintiff contends is not. Plaintiff's allegations indicate that the restrictions imposed upon him were reasonably related to the legitimate goal of maintaining security and order in the prison. Nor does plaintiff allege a purposeful intent on the part of prison officials to punish plaintiff. For these reasons, the court will dismiss as frivolous all claims against Pedrick pursuant to pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### G. Religious Diet

Plaintiff, who adheres to the mystic branch of Wicca, alleges that Morgan violated his constitutional rights when plaintiff was not provided a Kosher diet following questioning by a rabbi who inquired "just how Jewish the plaintiff thinks he is," and this humiliated him.[7] Plaintiff alleges that he follows a nature based/oriented religion in

---

[7]Wicca is an "earth-based" religion falling under the "Pagan" umbrella group. *See Kramer v. Pollard*, 2012 WL 6040735 (7th Cir. Dec. 5, 2012) (slip op.); *McAlister v. Livingston*, 348 F. App'x 934 (5th Cir. 2009) (unpublished); *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825 (8th Cir. 2009); *Kay v. Bemis*, 500 F.3d 1214 (10th Cir. 2007);

12

which all animals and plants are sacred. Fruits, vegetables, and meats (upon slaughter) must be prepared by invoking Deity. The HRYCI offers the following diets: Kosher (practicing), Kosher (non-practicing), Ramadan (Muslim), vegetarian, and food-cart. It is not clear if the offered diets satisfy plaintiff's religious needs.

When a prisoner claims that his right to exercise religion has been curtailed, a court must determine as a threshold matter whether the prisoner has alleged a belief that is "both sincerely held and religious in nature." *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000). If so, the court must then apply the four-factor test set forth in *Turner v. Safley*, 482 U.S. 78 (1987), to determine whether the curtailment at issue is "reasonably related to penological interests." *DeHart*, 227 F.3d at 51. Following a review of the allegations, the court finds that plaintiff has adequately alleged denial of a religious diet, and will allow him to proceed with the claim.

## IV. CONCLUSION

For the above reasons, the court concludes that plaintiff has alleged what appears to be cognizable and non-frivolous dental, medical, and mental health claims against Phillip Morgan, Mental Health Management, and Correct Care Solutions, and a religion claim against Phillip Morgan. All remaining claims, including the claims against Humphries, Danberg, and Pedrick will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

An appropriate order will be entered.

---

*Jackson v. Lewis*, 163 F.3d 606 (9th Cir. 1998) (table).

13