IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| DONALD D. PARKELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 12-1304-SLR |
| | ) | |
| PHILLIP MORGAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Donald D. Parkell, Wilmington, Delaware. Pro se.

Devera B. Scott, Deputy Attorney General, State of Delaware Department of Justice, Dover, Delaware. Counsel for Defendant Morgan.

Scott G. Wilcox, Esquire and Daniel A. Griffith, Esquire of Whiteford Taylor Preston, LLC, Wilmington, Delaware. Counsel for Defendant Correct Care Solutions, LLC.

## MEMORANDUM OPINION

Dated: June 6 , 2014
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Donald D. Parkell ("plaintiff") is a sentenced inmate at the Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware. On October 9, 2012, plaintiff filed a complaint and motion to proceed in forma pauperis pursuant to 42 U.S.C. § 1983 against Phillip Morgan ("Morgan"), Mental Health Management ("MHM"), Correct Care Solutions ("CCS"), and Maintenance Officer Humphries ("Humphries"), alleging various constitutional violations. (D.I. 1; D.I. 3) On January 9, 2013, plaintiff amended his complaint[1] and filed a motion for a temporary restraining order and a preliminary injunction to obtain dental treatment. (D.I. 8; D.I. 10) On January 22, 2013, the court permitted plaintiff to proceed with his medical and dental claims against Morgan, CCS, and MHM and his First Amendment claim against Morgan.[2] (D.I. 11; D.I. 12) On April 18, 2013, the court denied plaintiff's motion for a temporary restraining order and a preliminary injunction. (D.I. 24) On June 28, 2013, plaintiff filed a motion to amend his complaint, which on July 25, 2013 was denied by the court without prejudice. (D.I. 35; D.I. 38) On August 12, 2013, plaintiff again filed a motion to amend his complaint, adding allegations that: (1) Morgan violated his First and Fourteenth Amendment rights by depriving him of a kosher diet in accordance with his Wiccan faith; (2) Morgan violated his Fifth and Eighth Amendment rights by enacting policies that prevented detainees from receiving dental treatment during the first six months of

---

[1] The amended complaint added claims against Commissioner Carl Danberg ("Danberg") and Lieutenant Pedrick ("Pedrick") and voluntarily dismissed the claims against Humphries.

[2] The court dismissed all claims against Danberg and Pedrick as frivolous pursuant to 28 U.S.C. §§ 1915 and 1915A.

incarceration; and (3) CCS violated his Fifth, Eighth, and Fourteenth Amendment rights by depriving him of dental care during his first six months of incarceration and instructing him to purchase medically necessary items from the commissary. (D.I. 45 at ¶¶ 51, 55-6, 59-61) On November 21, 2013, the court granted the motion to amend. (D.I. 62) Presently before the court are motions for summary judgment filed by Morgan and CCS (collectively, "defendants"). (D.I. 66; D.I. 67) The court has jurisdiction over the claims asserted pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

## II. BACKGROUND

On March 29, 2012, plaintiff was admitted to HRYCI as a pretrial detainee. (D.I. 45 at ¶ 14) On March 8, 2013, plaintiff became a sentenced inmate. (D.I. 70, ex. B) At all relevant times, Morgan was the warden at HRYCI and CCS served as the medical contractor servicing the medical needs of all inmates at HRYCI. (D.I. 45 at ¶¶ 5, 7)

Upon admission to HRYCI, plaintiff was examined by a psychologist and initially refused the treatment of a psychiatrist. (*Id.* at 59) He filed a grievance requesting mental health treatment on April 8, 2012, which was upheld and the medical provider ultimately prescribed plaintiff medication for his mental health condition. (*Id.*)

On June 1, 2012, plaintiff filed a grievance requesting a dental filling. (D.I. 72, ex. A) This grievance was initially denied due to a Department of Correction ("DOC") policy requiring an inmate to be incarcerated in the facility for at least six months to receive a filling. (*Id.*) However, the grievance was ultimately upheld on August 15, 2012 because the articulated policy was found to be incorrect, and it was determined that plaintiff should have been seen by a dentist within three months of his complaint. (*Id.*; D.I. 69, ex. A) Plaintiff subsequently received regular dental treatment between

2

August 2012 and January 2013. (D.I. 69, ex. A)

On July 30, 2012, plaintiff filed an additional grievance requesting a kosher diet as a Jewish Kabbalist. (D.I. 70, ex. A at 1) Since plaintiff was registered as a Catholic, and not a practicing Jew, HRYCI Food Services instructed him to meet with the rabbi to get a "Jewish pass." (Id.) Plaintiff alleges that this pass was denied. (D.I. 71 at 4) On February 28, 2013, plaintiff filed a second grievance requesting a kosher diet, based not on his practice of Jewish Kabbalism, but on his Wiccan faith. (Id., ex. D) This grievance was denied because plaintiff is not a practicing Jew, an HRYCI requirement for receiving a kosher diet. (Id.)

On August 12, 2012, plaintiff filed a grievance alleging that he suffered pain because he was unable to follow CCS's instructions to purchase pain medication and other over-the-counter medical products from the commissary to alleviate pain for his medical conditions. (D.I. 45 at 80) On September 11, 2012, HRYCI resolved this grievance by placing plaintiff on the indigent list. (Id.) As such, plaintiff is no longer required to pay for these medically necessary items from the commissary. (D.I. 69, ex. C)

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that

3

could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

### A. Plaintiff's Claims Against Morgan

Plaintiff sued Morgan, in both his official and individual capacities, alleging violations of plaintiff's First and Eighth Amendment rights. (D.I. 45) Morgan moves for summary judgment on the following grounds: (1) he is immune from liability in his official capacity under the Eleventh Amendment; (2) plaintiff has failed to show either that Morgan violated plaintiff's First Amendment right to practice his religion or that he

4

was deliberately indifferent to his serious medical needs under the Eighth Amendment; and (3) plaintiff has not demonstrated that Morgan was personally involved in the alleged deprivation of his constitutional rights. (D.I. 70)

### 1. Eleventh Amendment immunity

The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996); *Pennhurst State Sch. & Hosp. v. Halderman* (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v. Howard*, 353 F. App'x. 667, 672 (3d Cir. 2009). Accordingly, § 1983 claims for monetary damages against a state, state agency, or a state official in his official capacity are barred by the Eleventh Amendment. *See id.*

However, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *See Ex parte Young*, 209 U.S. 123 (1908). "This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief." *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (internal citations omitted).

As will be discussed below, the record does not support a finding that Morgan acted in violation of the First Amendment to warrant injunctive relief. In any event, as the State of Delaware has neither consented to plaintiff's suit nor waived its immunity,

5

Morgan is entitled to immunity under the Eleventh Amendment. Therefore, the court grants Morgan's motion for summary judgment as to the claims raised against him in his official capacity.[3]

## 2. Plaintiff's claims under the First and Eighth Amendments

### a. First Amendment

The First Amendment guarantees that prisoners shall have "reasonable opportunities" to exercise their religion without fear of penalty. *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Jerry v. Francisco*, 632 F.2d 252, 257 (3d Cir. 1980). However, reasonable opportunities do not extend to every religion-related demand that could be made by a prisoner. *Cruz*, 405 U.S. at 322 n.2.

To establish a violation of his right to freely exercise his religion, plaintiff must satisfy the "reasonableness test" set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987), and *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). Under these cases, when a prison regulation encroaches upon prisoners' rights to free exercise of their religion, the regulation is valid if it is reasonably related to a legitimate penological interest. *See Turner*, 482 U .S. at 89; *O'Lone*, 482 U.S. at 349.

Plaintiff alleges that the denial of kosher meals violates his First Amendment right to practice his chosen religion, and seeks injunctive relief in the form of HRYCI providing him a kosher diet. (D.I. 45 at ¶ 61) The record here fails to establish that Morgan denied plaintiff's constitutional right to practice his religion by denying his grievance for a kosher diet. Although plaintiff presents the denial of his kosher diet

---

[3] Plaintiff's claim for injunctive relief in the form of dental treatment is moot, since he has already received the treatment sought upon prevailing on his dental grievance.

6

request as evidence, he fails to establish Morgan's direct involvement with the decision.
Furthermore, plaintiff fails to rebut Morgan's testimony that he was not personally
involved in making decisions about offenders' religious diets and that he delegated
grievance-related duties to the deputy warden.  (D.I. 70, ex. C)  The record does not
support a finding that Morgan violated plaintiff's First Amendment right to practice his
religion.  Therefore, the court grants Morgan's motion for summary judgment in this
regard.

### b. Eighth Amendment

The Eighth Amendment's proscription against cruel and unusual punishment
requires that prison officials provide inmates with adequate medical care.  *Estelle v.
Gamble*, 429 U.S. 97, 103-05 (1976).  In order to set forth a cognizable claim, an
inmate must allege (i) a serious medical need and (ii) acts or omissions by prison
officials that indicate deliberate indifference to that need.  *Id.* at 104; *Rouse v. Plantier*,
182 F.3d 192, 197 (3d Cir. 1999).  A prison official is deliberately indifferent if he knows
that a prisoner faces a substantial risk of serious harm and fails to take reasonable
steps to avoid the harm.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prison
official may manifest deliberate indifference by "intentionally denying or delaying access
to medical care."  *Estelle*, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long
as the treatment provided is reasonable.  *Lasko v. Watts*, 373 F. App'x. 196, 203 (3d
Cir. 2010) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-40 (2d Cir. 2000)).  "[M]ere
disagreement as to the proper medical treatment" is insufficient to state a constitutional
violation.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

7

Prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill*, 372 F.3d at 236 (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

Plaintiff alleges that Morgan violated his Eighth Amendment right by denying him dental care during his first six months of incarceration. (D.I. 45 at ¶ 56) The record reflects that plaintiff received dental care for his reported conditions after the initial misunderstanding of the six-month-wait policy for dental fillings. In addition, plaintiff fails to rebut Morgan's testimony that Morgan was not personally involved in the scheduling or decision-making process regarding offenders' (including plaintiff's) dental treatment. (*See* D.I. 70, ex. C at 1-2) The record does not support a finding that Morgan was deliberately indifferent to plaintiff's medical and dental needs in violation of plaintiff's Eighth Amendment rights. Therefore, the court grants Morgan's motion for summary judgment in this regard.[4]

### 3. Personal involvement

"A defendant in a civil rights action 'must have personal involvement in the

---

[4] The court will not address the issue of qualified immunity for Morgan insofar as there has been no violation of plaintiff's constitutional rights under the First and Eighth Amendments.

alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

It is well established that supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976); *Durmer*, 991 F.2d at 69 n.14 (3d Cir. 1993). Purpose rather than knowledge is required to impose liability on an official charged with violations arising from his or her superintendent responsibilities. *Iqbal*, 556 U.S. at 677. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* A plaintiff must show that an official's conduct caused the deprivation of a federally protected right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Additionally, the filing of a grievance is not sufficient to show the actual knowledge necessary for personal involvement, *Rode*, 845 F.2d at 1208, and participation in the after-the-fact review of a grievance is not enough to establish personal involvement. *See, e.g., Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation). *See also Cole v. Sobina*, 2007 WL 4460617 (W.D. Pa. Dec. 19, 2007); *Ramos v. Pennsylvania Dep't of Corr.*, 2006 WL 2129148 (M.D. Pa. July 27, 2006). *Cf. Wilson v. Horn*, 971 F.Supp. 943, 947 (E.D. Pa.

9

1997), aff'd, 142 F.3d 430 (3d Cir. 1998) (prison officials' failure to respond to inmate's grievance does not state a constitutional claim).

The record does not demonstrate that Morgan was personally involved in the decisions regarding plaintiff's dental care nor the denial of his religious diet preferences. Plaintiff points to Morgan's supervisory role to make his claims, but such supervisory liability is insufficient to establish that Morgan personally deprived plaintiff of his constitutional rights under Iqbal. Although plaintiff further alleges that Morgan was aware of his grievances and of the erroneous six-month-wait policy for fillings, plaintiff has not presented any evidence to support these allegations or rebut Morgan's statements that he had no personal involvement in plaintiff's dental care or religious diet accommodations whatsoever. Accordingly, the court grants Morgan's motion for summary judgment in this regard.

### B. Plaintiff's Claims Against CCS

Plaintiff alleges that CCS violated his Eighth Amendment rights by denying him dental care and necessary medical supplies such as pain medication. (D.I. 45 at ¶¶ 51, 55) CCS moves for summary judgment arguing that it has not violated plaintiff's Eighth Amendment rights because plaintiff has not established that CCS maintained a policy or custom of denying him medical care with deliberate indifference to his serious medical needs. (D.I. 68)

When a plaintiff relies upon a theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. Sample v. Diecks, 885 F.2d 1099, 1110 (3d Cir. 1989); Miller v. Correctional Med. Sys., Inc., 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that CCS is directly

10

liable for the alleged constitutional violations, plaintiff "must provide evidence that there was a relevant [ ] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

Assuming the acts of CCS' employee(s) have violated plaintiff's constitutional rights, those acts may be deemed the result of a policy or custom of the entity for whom the employee works, thereby rendering the entity liable under § 1983, where the inadequacy of existing practice is so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent to the need. *See Natale*, 318 F.3d at 584 (citations omitted). "'Policy is made when a decision-maker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict.'" *Miller*, 802 F. Supp. at 1132 (alteration in original) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480; *Fletcher v. O'Donnell*, 867 F.2d 791, 793–94 (3d Cir. 1989)).

Plaintiff has failed to demonstrate that CCS maintained a policy or custom with deliberate indifference depriving him of his Eighth Amendment right to medical care. Although plaintiff claims that he did not receive the requested dental treatment for sixteen months, the record does not demonstrate that he suffered serious harm as a

11

result. In addition, plaintiff has not presented evidence to demonstrate a CCS policy or custom to deprive him of medical care; the record only points to the singular erroneous application of the six-month-wait policy. Once that mistake was realized, CCS provided plaintiff with regular dental care,[5] indicating that the custom was in fact to provide dental and medical care to inmates, including plaintiff. Plaintiff, therefore, has failed to demonstrate that CCS denied him access to medical care with the knowledge that it would cause him serious harm.

Plaintiff's claim that CCS required him to purchase over-the-counter medications for pain relief also does not rise to the level of an Eighth Amendment violation. The law is clear that while medical care cannot be conditioned on an inmate's ability to pay, charging inmates for medical care is not per se unconstitutional. *See Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997). Once plaintiff filed a grievance indicating his inability to pay for medication at the commissary, he was placed on the indigent list and subsequently not required to pay. Therefore, the record does not sufficiently demonstrate that CCS violated plaintiff's Eighth Amendment rights. The court grants CCS's motion for summary judgment in this regard.

## V. CONCLUSION

For the reasons discussed above, the court grants defendants' motions for summary judgment. (D.I. 66; D.I. 67) An appropriate order shall issue.

---

[5]As he has already received the dental care prayed for in the complaint, and the record demonstrates that he has been provided consistent dental care after the resolution of the June 1 grievance, plaintiff's claims for injunctive relief are moot.

12