IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD PARKELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civ. No.12-1304-SLR ) |
| MENTAL HEALTH MANAGEMENT, | ) ) |
| Defendant. | ) ) |

Donald D. Parkell, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro se Plaintiff.

Jacqueline G. Genesio, Esquire, Weber Gallagher Simpson Stapleton Fires & Newby LLP, Dover, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: July 1 , 2015
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Donald D. Parkell ("plaintiff"), who proceeds pro se and has been granted leave to proceed in forma pauperis, is an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware. He filed this action pursuant to 42 U.S.C. § 1983 against defendants Phillip Morgan, Mental Health Management ("MHM" or "defendant")[1], Correct Care Solutions, maintenance officer Humphries, former commissioner Carl Danberg, and Lt. Pedrick alleging violations of his constitutional rights. (D.I. 3, 8, 45) MHM is the only remaining defendant, all other defendants having been dismissed or summary judgment granted in their favor. (See D.I. 8, 12, 88) Presently before the court is defendant's unopposed motion for summary judgment and plaintiff's motions to alert the court of MHM's failure to comply with a court order and for sanctions. (D.I. 98, 104, 106) The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the court will grant defendant's motion and will deny plaintiff's motion.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was housed at the Howard R. Young Correctional Institution ("HYRCI") in Wilmington, Delaware as a pretrial detainee and, on March 8, 2013, he became a sentenced inmate. (D.I. 45, ¶ 14; D. I. 70, ex. B) During the relevant time-frame, defendant was the contract health care provider who served the mental health needs of inmates at HRYCI. (D.I. 45 at ¶ 6)

---

[1] MHM's correct name is MHM Correctional Services, Inc.

The original complaint alleges that defendant violated plaintiff's constitutional rights by failing to provide mental health treatment. (*See* D.I. 3) More particularly, plaintiff alleges that when he arrived at the HYRCI on March 29, 2012, he informed the nursing staff of his mental health condition and the need for an evaluation and for continued medication, yet he was not seen by mental health care providers until nearly two months after his arrival. Plaintiff alleges that defendant failed to staff a sufficient number of employees to provide treatment to inmates at the HYRCI, and this caused a long delay in plaintiff's receipt of mental health treatment. When plaintiff was finally seen and prescribed medication, within a week he began experiencing adverse reactions, but it was three to four weeks before the medication was adjusted.

Plaintiff's mental health and medical records (D.I. 99, ex. A)[2] indicate that during the March 29, 2012 intake screening, he provided a history of mental health issues and medications he had taken. Plaintiff relayed that he had no suicidal ideation, that he had not shown any serious psychiatric problems during incarceration or had violent behavior or threats. Plaintiff did not exhibit signs of depression.

On March 30, 2012, plaintiff was admitted to the infirmary for benzodiazepine withdrawal monitoring until he was discharged on April 2, 2012. On the date of admission, plaintiff underwent a comprehensive mental health evaluation. (D.I. 102, part 3 of 4) The medical plan was to refer plaintiff to a psychiatrist for medication evaluation. (*Id.*) However, plaintiff indicated during the exam that he was "not

---

[2] Facts regarding plaintiff's mental health treatment are taken from D.I. 99, ex. A, except when otherwise cited to D.I. 102.

2

interested in seeing a psychiatrist at [that] time and was instructed on how to access mental health services, including psychiatry, should he decide to." (*Id.*)

Plaintiff submitted a mental health request on April 5, 2012 and asked that his mental health records from the Rockford Center[3] be sent to the HYRCI. In addition, he requested Clonazepam, complained that he was experiencing extreme anxiety, and stated that he was trying to get to dorm four (i.e., the medical dorm). On April 10, 2012, plaintiff was placed on a list for 1D housing, and referred to a physician for medication. Plaintiff submitted a mental health request on April 15, 2012 complaining that he had yet to see a physician. (D.I. 102, part 3 of 4) Plaintiff's mood and affect were stable, but he was assessed as hypo-manic. (*Id.*)

Plaintiff was seen by a psychiatrist on May 17, 2012 and placed on fluoxetine for a trial period.[4] Plaintiff request Klonopin, and "was told no Benzos" given his history of drug use and drug seeking. Plaintiff was examined on June 7, 2012, after submitting a sick call request. His mood and affect were noted to be stable. Plaintiff requested a change in medication, and he was instructed to continue on fluoxetine and return for follow-up. A July 10, 2012 psychiatric progress note indicates that plaintiff's mental health records were received and reviewed and he was seen for follow-up on the trial course of fluoxetine. Plaintiff indicated that Klonopin is the only medication that provides relief. He described feeling hyper and tense and expressed a need to be hypervigilant for fear that others would get one over on him. Plaintiff

---

[3] A private psychiatric facility in Delaware.

[4] Prozac is a brand name of fluoxetine.

3

declined an offer of mood stabilizer medication. The dose of fluoxetine was increased and, on October 1, 2012, a 90-day prescription of fluoxetine was ordered for plaintiff.

On December 27, 2012, plaintiff submitted a mental health request stating that he had tried fluoxetine for some time, was told that he would be seen for a review, and that he could not continue to take fluoxetine as it does "nothing for [him]." Plaintiff was seen on December 31, 2012, complained that he felt "haywire," and indicated that, in the past, he had taken Wellbutrin and it worked for him then. Plaintiff was prescribed Wellbutrin and directed to follow-up in 90 days with instructions to discontinue fluoxetine.

Plaintiff submitted a mental health request on February 5, 2013 and requested an increase in his dose of Wellbutrin. He stated that he had been on Wellbutrin for a while and, although it seemed to help, it "wears off too quickly." Plaintiff underwent a psychiatric evaluation on February 7, 2013. Once again, he indicated that the Wellbutrin provided relief but he believed that he needed an increase in the dose. The dose was increased and plaintiff received a 90-day prescription at the increased dose.

## III. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be--or, alternatively, is--genuinely disputed must support the assertion either by citing to "particular parts of materials in the record, including depositions, documents,

4

electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. United States Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated

5

"against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

A schedule was entered for plaintiff to file and serve an answering brief in response to defendant's motion on or before April 3, 2015. (See D.I. 100) Plaintiff did not file an opposition to the motion for summary judgment. However, the court will not grant the entry of summary judgment without considering the merits of defendant's unopposed motion. Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.").

Defendant moves for summary judgment on the grounds that plaintiff failed to proffer any evidence to show that it was deliberately indifferent to his serious medical needs or that it enacted or maintained a policy or custom that violated his constitutional rights.

## IV. DISCUSSION

Plaintiff was a pretrial detainee until he was sentenced on March 8, 2013. As a pretrial detainee, the Due Process Clause of the Fourteenth Amendment affords plaintiff protection for his medical needs claim. Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977). See also Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). When evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment, the Third Circuit has found no reason to apply a different standard than that set forth in Estelle v. Gamble, 429 U.S. 97 (1976). Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003).

6

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. at 103-105. In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (unpublished) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000)). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. at 107. Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a

7

constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

When a plaintiff relies on the theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that defendant is directly liable for the alleged constitutional violations, plaintiff "must provide evidence that there was a relevant [MHM] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale*, 318 F.3d at 584 (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories). Assuming the acts of defendant's employee have violated a person's constitutional rights, those acts may be deemed the result of a policy or custom of the entity for whom the employee works, thereby rendering the entity liable under § 1983, where the inadequacy of existing practice is so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent to the need. *See Natale*, 318 F.3d at 584 (citations omitted). "'Policy is made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict.'" *Miller*, 802 F. Supp. at 1132 (alteration in original) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-

settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480; *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)).

Even when construing the evidence in the light most favorable to plaintiff, as the court must, no reasonable jury could find that defendant violated plaintiff's constitutional rights. Plaintiff's medical records indicate that he received a mental health evaluation upon entry to the HRYCI. Thereafter, he received continuing mental health treatment including medication. While plaintiff complains of a delay in receiving mental health treatment, the record reflects that he indicated on March 30, 2012 that he was not interested in receiving treatment from a psychiatrist. This, despite the medical plan to refer plaintiff to a psychiatrist for a medication evaluation. The record further reflects that, when plaintiff sought mental health treatment, it was provided. There is no indication in the evidence of record that mental health employees denied treatment to plaintiff. Notably, mental health employees were receptive to plaintiff's suggestions regarding medication that he had taken in the past. The evidence of record does not support plaintiff's claim of deliberate indifference to his mental health needs.

Inasmuch as the court has concluded that mental health employees did not violate plaintiff's constitutional rights, defendant cannot be liable based on the theory that it established or maintained an unconstitutional policy or custom responsible for violating plaintiff's rights. *See Goodrich v. Clinton Cnty. Prison*, 214 F. App'x 105, 113 (3d Cir. 2007) (unpublished) (policy makers not liable in prison medical staff's alleged deliberate indifference to prisoner's serious medical needs where, given that there was

no underlying violation of prisoner's rights, policy makers did not establish or maintain an unconstitutional policy or custom responsible for violating prisoner's rights).

Based upon the foregoing analysis, the court will grant defendant's motion for summary judgment. (D.I. 98)

## V. MOTION REGARDING DEFENDANT'S ALLEGED FAILURE TO COMPLY WITH A COURT ORDER

On February 18, 2015, the court ordered defendant to produce to plaintiff his medical and mental health records and sick call slips for medical and mental health in its possession on or before March 6, 2015. (*See* D.I. 100) On March 25, 2016, plaintiff filed a motion indicating that defendant failed to comply with the order when it provided copies to the court, but not to plaintiff. (D.I. 104) Plaintiff seeks the records and asks the court to order defendant to pay his costs, totaling $10.00, for copy costs and postage in filing the motion. He also moves for sanctions for the assessment of expenses related to the pursuit of production of documents. (D.I. 106)

Defendant responded on April 13, 2013 and indicated the records were provided to plaintiff on February 25, 2015, but believed that plaintiff had yet to receive the documents. It, therefore, provided plaintiff with an additional copy on April 13, 2015. Based upon defendant's representations, the court will deny plaintiff's motions. (D.I. 104, 106)

## VI. CONCLUSION

For the above reasons, the court will grant defendant's motion for summary judgment (D.I. 98) and will deny plaintiff's motion to alert the court of defendant's failure to comply with a court order (D.I. 104) and motion for sanctions (D.I. 106).

A separate order shall issue.